E-FILED
Friday, 17 November, 2017  10:06:47 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DARREN WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.:14-1162-JES |
| | ) |
| ADAM MORROW, | ) |
| | ) |
| Defendant. | ) |

### ORDER ON SUMMARY JUDGMENT

Plaintiff, a *pro se* prisoner, filed a Complaint under 42 U.S.C. § 1983 alleging inhumane conditions of confinement at the Hill Correctional Center ("Hill"). Defendants IDOC, Warden Akpore, Berry Bankert, and Unknown Employee were DISMISSED at merit review, with Defendant Adam Morrow remaining. Defendant has filed a Motion for Summary Judgment [ECF 45], to which Plaintiff has responded. For the reasons indicated herein, Defendant's Motion for Summary Judgment is GRANTED.

### MATERIAL FACTS

Plaintiff alleges that on September 2, 2012, he was confined at Hill and placed in segregation cell #19 in which the light was not working, water was leaking onto the floor and a piece of metal protruded from the floor. Plaintiff walked with a cane which was taken when he was placed in segregation. Plaintiff allegedly had to hop about the cell. Plaintiff complained of the conditions to Defendant Morrow that same day. Plaintiff testified at his deposition that Defendant gave him a mop and told him he would put in a work order for the leak to be fixed. Plaintiff claims that later, he was given towels to soak up the water.

Plaintiff asserts that he made daily complaints to Defendant Morrow. Plaintiff testified that Defendant told him he had "personally" placed the work order in the maintenance mail box

1

on September 7, 2012. Defendant allegedly submitted another work order on September 12, 2012. On September 22, 2012, the conditions remained uncorrected and Plaintiff fell, allegedly after his pant leg became caught on the metal piece protruding from the floor. This caused further injury to Plaintiff's knee, requiring treatment in the Health Care Unit.

Defendant Morrow asserts that the complained-of conditions are not serious enough to implicate constitutional protections. He asserts, further, that he was not deliberately indifferent as he filled out a work order to have the conditions corrected. Defendant explains that, as a corrections officer, he is not to fix such conditions himself. Rather, he is to fill out a work order and place it in the maintenance department mail box.

Defendant has provided the sworn affidavit of Doug Sanford, Pontiac Chief Engineer. Mr. Sanford corroborates that officers are not allowed to make repairs in cells. They are to submit a work order and place it in the maintenance mail box. The work order is reviewed by the Supervisor of the area where the work is to occur. If approved by the Supervisor, it is forwarded to the Chief Engineer for review. If the Chief Engineer approves the request, the order is logged, numbered, prioritized and distributed. [ECF 46-1 p. 15]. The priority the Chief Engineer attaches to the request is then subject to review by the Chief Administrative Officer or the Assistant Warden or Assistant Supervisor of Operations. *See* Affidavit of Christopher McLaughlin, Assistant Warden of Operations. [ECF 46-1 p. 14].

On September 22, 2012, Plaintiff filled out a grievance complaining that he fell due to water and the protruding metal piece. The matter was reviewed by Plaintiff's counselor who replied on September 25, 2012. The Counselor apparently spoke with Defendant Morrow who reiterated that he had personally placed the work order in the maintenance department mail box. [ECF 49 p. 15].

The parties agree that the water leak and light were repaired on September 25, 2012. Chief Engineer Doug Sanford attests that the work orders are only kept for three years and they no longer have a copy of the orders Defendant submitted. Mr. Sanford has, however, provided a copy of the work order log. It documents that a work order for the water leak was logged on September 22, 2012, and a work order for the light was logged on September 24, 2012. The log corroborates that the repairs were made on September 25, 2012. [ECF 46-1 p.16].

The parties do not discuss any work order slip regarding the protruding metal piece and Defendant denies that this condition existed. He points to the Injury Report which records Plaintiff giving a history of slipping on water, without mention of the metal piece.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Id*. 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co*., 6 F.3d 1176, 1183(7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some

3

metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## CONDITIONS OF CONFINEMENT STANDARD

Punishments violate the Eighth Amendment if they are "incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). In order to violate the Constitution, conditions of confinement must be "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Conditions which are restrictive and even harsh, are part of the penalty that offenders pay. Mere discomfort and inconvenience do not implicate the Constitution. *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir.1986). A prison official does not become liable for inhumane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## ANALYSIS

Defendant claims that the alleged conditions do not amount to a constitutional violation, and that he was not deliberately indifferent as did all he could when he submitted the work order.

The Court considers whether the water leaking onto the floor, the inoperable light and the protruding metal piece are sufficient to violate the Constitution. Defendant points out that Plaintiff was given a mop and towels to dry the floor, while awaiting action by maintenance. He also asserts that Plaintiff's cell had a window so that his cell was illuminated by natural daylight. Plaintiff concedes that he had a window but claims that there was a film over it, and that the light was partially blocked by a top bunk.

Plaintiff asserts and Defendant does not dispute, that his cane was taken when he was placed in the segregation cell. Plaintiff claims that he had to hop about a cell which was often dark, which had water on the floor, and which had metal protruding from the floor. While living several weeks in such conditions might not otherwise state a constitutional claim, the court is obligated to review these conditions in their totality. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) ("[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so.").

Here, Plaintiff was forced, for 20 days, to hop about a cell in these described conditions. While the conditions, singly and in different circumstances, might not give rise to a constitutional violation, in the aggregate they well might. *See Dixon v. Godinez*, 114 F.3d 640, 643–45 (7th Cir. 1997) (cold cell, combined with alleged lack of warm clothing and bedding, created material issue of fact to defeat summary judgment). The Court now considers whether Defendant Morrow is constitutionally liable for these conditions.

Defendant asserts that he was not deliberately indifferent to Plaintiff's safety as he did all he could when he submitted the work order. Defendant told Plaintiff he personally submitted a work order on September 7, 2012, placing it in the maintenance mailbox, and submitted another on September 12, 2017. The maintenance department logs document that the work orders were

5

logged in on September 22 and 24, 2012.  This, of course would be after review and approval by the Supervisor and Chief Engineer.

Plaintiff, however, believes that Defendant did not submit the work orders until September 22 and 24, as these were the dates they were entered into the log.  [ECF 49 § 21]. The affidavits of McLaughlin and Stanford, however, attest that work orders are entered into the log only after review and approval by the Supervisor and the Chief Engineer   As a result, work orders are not recorded in the maintenance logbook when they are submitted by staff, but after they have been reviewed and approved at two levels.  Plaintiff's mistaken belief as to the process is not enough to create a triable issue of fact to support that Defendant did not timely submit the work orders.

As noted, Defendant is only liable for the allegedly inhumane conditions of confinement if he was aware of an excessive risk to Plaintiff's safety and failed to take reasonable measures to prevent it.  Here, Plaintiff submitted work orders on two occasions and discussed the matter with his supervisor. [ECF 46-1 p. 3]. He also gave Plaintiff towels and a mop to remove the water from the floor.  While there was arguably a delay in effecting the repairs, that delay is not the result of any culpable conduct on the part of Defendant.  *Streckenbach v. VanDensen*,  868 F.3d 594, 597 (7th Cir.  2017) (defendant not vicariously for others' mistakes) (internal citations omitted).

The Court does not find that leaving Plaintiff in his cell under the described conditions, while waiting for the requested repairs, was so unreasonable as to violate the Eighth Amendment.  Accordingly, Defendant's motion for summary judgment [ECF 45] is GRANTED.

## QUALIFIED IMMUNITY

The Court has found that Defendant did not violate the Eight Amendment by subjecting Plaintiff to inhumane conditions of confinement. As a result, the Court need not address whether he is entitled to qualified immunity. *Van den Bosch v. Raemisch*, 658 F.3d 778, 787 n. 9 (7th Cir. 2011).

**IT IS THEREFORE ORDERED:**

1) Defendants' Motion for Summary Judgment [ECF 45] is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff. This case is terminated, with the parties to bear their own costs. All deadlines, internal settings and pending motions are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

3) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 17th day of November, 2017

       s/James E. Shadid      
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE